1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PARMINDER KAUR LITT,                    Case No.  1:20-cv-00995-HBK

12              Plaintiff,                   OPINION AND ORDER TO REMAND CASE
                                             TO COMMISSIONER [2]
13        v.
                                             (Doc. No.  16)
14   KILOLO KIJAKAZI,
     COMMISSIONER OF SOCIAL
15   SECURITY,[1]

16              Defendant.

17

18

19        Parminder Kaur Litt ("Plaintiff") seeks judicial review of a final decision of the

20   Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for

21   disability insurance benefits under the Social Security Act.  (Doc. No. 1).  The matter is currently

22   before the Court on the parties' briefs, which were submitted without oral argument.  (Doc. Nos.

23   16-18).  For the reasons stated, the Court orders this matter REMANDED for further

24   administrative proceedings.

25

26   [1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule
     25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the
27   defendant in this suit.
     [2] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C.
28   §636(c)(1).  (Doc. No. 10).

## I.      JURISDICTION

Plaintiff protectively filed for disability insurance benefits on December 20, 2016, alleging a disability onset date of February 15, 2013.  (AR 235-36).  Benefits were denied initially (AR 143-48) and upon reconsideration (AR 150-55).  A hearing before an administrative law judge ("ALJ") was held on May 1, 2019.  (AR 43-75).  Plaintiff testified at the hearing and was represented by counsel.  (*Id.*).  The ALJ denied benefits (AR 16-42) and the Appeals Council denied review (AR 5-10).  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

## II.      BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner.  Only the most pertinent facts are summarized here.

Plaintiff was 47 years old at the time of the hearing.  (AR 49).  She was born in India and completed two years of college in India.  (AR 49-50).  Plaintiff lives with her husband, her two adult sons, and her parents.  (AR 50).  She has work history as a certified nursing assistant.  (AR 51-52).  Plaintiff testified that she stopped working because she hurt her back at work.  (AR 53-54).  At the time of the hearing she reported that she can stand for ten to fifteen minutes before she needs to sit or lay down; she can walk a maximum of fifty yards every hour; she can sit for fifteen to twenty minutes every hour; and she cannot lift twenty pounds.  (AR 59-62).  She uses a cane at home but it was not prescribed by a doctor; and she has to lay down to rest in her recliner four or five times a day, for thirty minutes to two hours at a time.  (AR 60-61, 66).  Plaintiff reported that she experiences depression even when taking medication.  (AR 69).

## III.      STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159 (quotation and citation omitted).  Stated differently, substantial evidence

1    equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

2    citation omitted).  In determining whether the standard has been satisfied, a reviewing court must

3    consider the entire record as a whole rather than searching for supporting evidence in isolation.

4    *Id.*

5         In reviewing a denial of benefits, a district court may not substitute its judgment for that of

6    the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible

7    to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir.

8    2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is

9    harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate

10   nondisability determination." *Id.* (quotation and citation omitted).  The party appealing the ALJ's

11   decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556

12   U.S. 396, 409-10 (2009).

13            **IV.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

14        A claimant must satisfy two conditions to be considered "disabled" within the meaning of

15   the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful

16   activity by reason of any medically determinable physical or mental impairment which can be

17   expected to result in death or which has lasted or can be expected to last for a continuous period

18   of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment

19   must be "of such severity that he is not only unable to do his previous work[,] but cannot,

20   considering his age, education, and work experience, engage in any other kind of substantial

21   gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

22        The Commissioner has established a five-step sequential analysis to determine whether a

23   claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the

24   Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the

25   claimant is engaged in "substantial gainful activity," the Commissioner must find that the

26   claimant is not disabled.  20 C.F.R. § 404.1520(b).

27        If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step

28   two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20

3

C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is

4

1   therefore entitled to benefits.  20 C.F.R. § 404.1520(g)(1).

2           The claimant bears the burden of proof at steps one through four above.  *Tackett v. Apfel*,

3   180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the

4   Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such

5   work "exists in significant numbers in the national economy."  20 C.F.R. § 404.1560(c)(2);

6   *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

7                              **V.     ALJ'S FINDINGS**

8           At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity

9   during the period from her alleged onset date of February 15, 2013 through her date last insured

10  of September 30, 2018.  (AR 21).  At step two, the ALJ found that through the date last insured

11  Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine with

12  radiculopathy involving the left lower extremity and neuropathy of the left lower extremity;

13  degenerative disc disease of the thoracic spine; hypothyroidism (status post partial

14  thyroidectomy); chronic pain syndrome; adjustment disorder with depressed mood; and post-

15  traumatic stress disorder.  (AR 21).  At step three, the ALJ found that through the date last insured

16  Plaintiff did not have an impairment or combination of impairments that met or medically

17  equaled the severity of a listed impairment.  (AR 22).  The ALJ then found that through the date

18  last insured Plaintiff had the RFC

19              to lift and/or carry 20 pounds occasionally and 10 pounds frequently.
                She could sit 6 hours in an 8-hour workday with normal breaks.  She
20              could stand and/or walk 6 hours in an 8-hour workday with normal
                breaks.  This capacity most closely approximates light work as
21              defined in 20 CFR 404.1567(b) except she can never climb ladders,
                ropes or scaffolding.  She could occasionally perform all other
22              postural activities, such as climbing ramps and stairs, balancing,
                stooping, kneeling, crouching, and crawling.  The claimant must
23              avoid concentrated exposure to temperature extremes, wetness,
                humidity, vibration, uneven terrain, and hazards.  The claimant can
24              have no more than frequent (2/3 of the workday with each group)
                face-to-face interaction with the general public, coworkers, and
25              supervisors.  The claimant could more than occasionally understand,
                remember, and/or apply information necessary to perform complex
26              and detailed work tasks, make judgments on complex and detailed
                work-related job assignments, and cope with the stress normally
27              associated with semi-skilled and skilled employment.

28  (AR 23).  At step four, the ALJ found that through the date last insured Plaintiff was unable to

                                              5

perform any past relevant work.  (AR 33).  At step five, the ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, including: cleaner, packing line worker, and mail clerk.  (AR 34).  On that basis, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from February 15, 2013, the alleged onset date, through September 30, 2018, the date last insured.  (AR 35).

## VI.   ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act.  (Doc. No. 1).  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly considered Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence and formulated the assessed RFC.

(Doc. No. 16 at 4-10).

## VII.   DISCUSSION

### A.  Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted).  "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d

1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for several reasons explained in [the] decision."  (AR 24).  The ALJ then went on to summarize Plaintiff's treatment records, including objective testing and clinical findings, and generally conclude that these records "confirm the presence of medically determinable impairments that would reasonably impose significant limitations to her ability to perform work-related activities, the extent to which these impairments limit [Plaintiff's] exertional and nonexertional functions is discussed in the opinion evidence."  (AR 27).  Plaintiff argues this conclusory statement is not a clear and convincing reason to reject Plaintiff's symptom claims.  The Court agrees.  The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits."  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).  However, "providing a summary of medical evidence … is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible."  *Id.* at 1278 (citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (emphasis in original).

The Court does note that after considering the medical opinion evidence, the ALJ returns to Plaintiff's symptom claims, and offers the following conclusory findings:

> Based on my review of the entire record and the hearing testimony,

> I conclude [Plaintiff's] subjective allegations of debilitating pain, mental symptoms, and limitation precluding all work activity are not supported by the objective evidence. Her testimony at the hearing was not persuasive or consistent with the objective evidence such as the physical examination findings of tenderness and somewhat decreased range of motion in the bac as documented throughout the record. Her activities of daily living are not consistent with one who suffers such severe limitations as to preclude all work activity. Finally, some of her alleged impairments and symptoms have been responsive to treatment and do not impose a disabling degree of limitation.

(AR 32). Defendant contends that these were clear and convincing reasons to reject Plaintiff's symptom claims; namely, that the ALJ properly "compared" Plaintiff's symptom claims to the objective medical evidence, responsiveness to treatment, and daily activities. (Doc. No. 17 at 12-14). First, as noted by Defendant, a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations. *See Tommasetti*, 533 F.3d at 1040; *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits). In support of this argument, Defendant cites portions of the ALJ's summary of the medical evidence that includes periodic reports of improvement due to epidural steroid injection, medication, ice and heat, and a TENS unit. (Doc. No. 17 at 13-14 (citing 25, 676, 723, 762, 939, 1485). However, the same summary of the medical record by the ALJ included evidence that Plaintiff continued to experience back and leg pain, physical therapy only gave mild relief, acupuncture was not effective, the epidural gave only 40% relief with back pain and no improvement in leg pain, and she continued to experience pain even when using the TENS unit. (AR 25, 676 (noting acupuncture was not effective), 723, 763, 939 (noting Plaintiff elected to discontinue physical therapy services "prior to attaining the agreed upon goals"), 1483).

It is well settled in the Ninth Circuit that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 795 F.3d at 1017. Moreover, as noted above, "[t]o ensure that our review of the ALJ's credibility determination is

meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by the evidence in the record, to support that credibility determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (noting the ALJ did not specifically identify any inconsistencies between the claimant's testimony and the record; rather, "she simply stated her non-credibility conclusion and then summarized the medical evidence supporting her RFC determination."). Here, the ALJ merely offers the conclusory statement that "some" of Plaintiff's "alleged symptoms have been responsive to treatment" without identifying with specificity which symptoms are at issue or how the referenced "improvement" effectively controls that symptom across the relevant adjudicatory period. (*See* AR 32). For all of these reasons, rejecting Plaintiff's symptom claims because "some" are "responsive to treatment," without further explanation or citation to the record, was not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

Second, Defendant contends that the ALJ properly "compared Plaintiff's allegations to her daily activities." (Doc. No. 17 at 13-14.) The ALJ may consider a claimant's activities that undermine reported symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). If a claimant can spend a substantial part of the day engaged in pursuits involving the performance of exertional or non-exertional functions, the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012)(internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). In support of this argument, Defendant noted that "earlier [in the ALJ's decision] Plaintiff stated she could "prepare simple meals, perform personal care and light household chores, drive, shop, and manage finances; and that Plaintiff's son wrote in a third-party function report at the same time that Plaintiff took short walks daily, knitted, cooked, cleaned, drive,

shopped, managed money, and visited family." (Doc. No. 17 at 13 (citing 300-02, 310-12)). However, the Court's review of the same records cited by Defendant also indicate that Plaintiff only prepared simple meals for five minutes at a time, a family member had to go shopping with her, she had no hobbies, and she could only walk ten to fifteen minutes at a time; and Plaintiff's son indicated that Plaintiff was unable to bend over without pain, unable to sweep or vacuum, needed help with shopping, did not socialize outside the home, and could only walk five to fifteen minutes before she needed to rest. (AR 301-05, 308-15). Plaintiff similarly testified that she has to sit down while she cooks and take breaks, does not do laundry, and does not socialize. (AR 64-65). Finally, as above, the ALJ did not identify the specific testimony that she found not to be credible, nor did she offer explanations for why the cited evidence of Plaintiff's ability to perform basic activities of daily living undermines Plaintiff's symptom claims, particularly as to her ability to stand, walk, and lift. *Holohan*, 246 F.3d at 1208 (when considering plaintiff's symptom claims, the ALJ must specifically identify the statements he finds not to be credible, and the evidence that allegedly undermines those statements); *Brown-Hunter*, 806 F.3d at 494. For all of these reasons, the ALJ's conclusory finding that Plaintiff's daily activities were inconsistent with "one who suffers such severe limitations as to preclude all work activity" was not a clear and convincing reason, supported by substantial evidence, to discount her symptom claims.

Third, Defendant notes that the ALJ "compared Plaintiff's allegations to the objective medical evidence" by "summariz[ing]" records that included "benign" and "normal" examination findings of full range of motion, normal reflexes, normal strength, normal gait, only "some" tenderness, and normal neurological findings. (Doc. No. 17 at 11 (citing 25-26, 676-77, 1272-74)). However, the same "summary" cited by Defendant in support of this argument also includes the ALJ's citation to a MRI of the lumbar spine indicating disc protrusion "with increased signal consistent with an annular tear"; MRI of the hip "confirming" torn labrum; nerve conduction studies consistent with radiculitis; tenderness and decreased sensation; antalgic gait; positive straight leg testing; diminished reflexes; and limited range of motion. (AR 25-26, 582-83, 679, 705-06, 779, 1057, 1273). Moreover, as noted by Plaintiff, regardless of whether the ALJ erred in finding Plaintiff's symptom claims were not corroborated by objective evidence, it is

10

1   well-settled in the Ninth Circuit that an ALJ may not discredit a claimant's pain testimony and

2   deny benefits *solely* because the degree of pain alleged is not supported by objective medical

3   evidence.  (Doc. No. 16 at 9); *Rollins*, 261 F.3d at 857 (emphasis added); *Bunnell v. Sullivan*, 947

4   F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601.  As discussed above, the additional

5   reasons given by the ALJ for discounting Plaintiff's symptom claims were not supported by

6   substantial evidence.  Thus, lack of corroboration by objective evidence cannot stand alone as a

7   basis for rejecting Plaintiff's symptom claims and the ALJ's finding is inadequate.

8          The Court concludes that the ALJ did not provide clear and convincing reasons, supported

9   by substantial evidence, for rejecting Plaintiff's symptom claims.  On remand, the ALJ must

10  reconsider Plaintiff's symptom claims.

11         **B.  RFC / Medical Opinions**

12         Plaintiff argues the assessed RFC is "unsupported by substantial evidence because the

13  ALJ failed to include Dr. [James G.] Fischer's findings without providing specific or legitimate

14  reasons."  (Doc. No. 16 at 4-8).  The RFC assessment is an administrative finding based on all

15  relevant evidence in the record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211,

16  1217 (9th Cir. 2005).  In determining the RFC, the ALJ must consider all limitations, severe and

17  non-severe, that are credible and supported by substantial evidence in the record.  (*Id.*) (RFC

18  determination will be affirmed if supported by substantial evidence).

19         Because the analysis of the RFC is dependent on the ALJ's reevaluation of Plaintiff's

20  symptom claims, as discussed above, the Court declines to address this challenge in detail here.

21  However, the Court does briefly note that the ALJ gave several reasons for rejecting Dr. Fischer's

22  2014 opinion in connection with her Worker's Compensation claim, that Plaintiff was

23  "permanently precluded from lifting, pushing, pulling, or carrying greater than 10 pounds.  She is

24  also precluded from repetitive bending, stooping, squatting, and reaching activities."  (AR 690).

25  "Overall, [the ALJ accorded] very little weight to Dr. Fischer's opinion as it is based on very

26  limited evidence and does not adequately consider other source records or the effects of

27  treatment."  (AR 29).  Specifically, the ALJ noted that the opinion was assessed 5 years prior to

28  the ALJ decision, and alleged that Dr. Fischer "did not address the effects of medications, nor any

long-term benefits from the epidural steroid injections or acupuncture.  He also failed to address in his conclusions the September 2013 note indicated that [Plaintiff] obtained 50 percent back pain reduction."  (AR 28-29).  Relevant factors when evaluating a medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole.  *Lingenfelter*, 504 F.3d at 1042; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); 20 C.F.R. § 404.1527(c)(6) (assessing the extent to which a medical source is "familiar with the other information in [the claimant's] case record").  However, as noted by Plaintiff, Dr. Fischer's review of treatment records explicitly noted that Plaintiff experienced a 50% reduction in back pain with the epidural steroid injection in September 2013.  (Doc. No. 16 at 6-7 (citing AR 684)).  Dr. Fischer also reviewed and summarized additional records, not acknowledged by the ALJ, indicating that while Plaintiff did report an improvement in back pain after the injections, she experienced no change in her leg pain; and "physical therapy and acupuncture were not effective."  (AR 682-85).

The ALJ additionally concluded, without citation to the record, that "notwithstanding Dr. Fischer's examination findings, other evaluations do not support his conclusions.  Moreover, evidence obtained subsequent to this evaluation does not support the degree of limitation assessed by this examiner."  (AR 29).  The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion.  *Orn*, 495 F.3d at 631.  However, when considering the medical opinion evidence, the ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Brown-Hunter*, 806 F.3d at 495 (a court "cannot substitute [the court's] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions.  Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence.").  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Reddick*, 157 F.3d at 725.  Here, the ALJ fails to state with requisite specificity how the specific limitations assessed by Dr. Fischer are

12

1   inconsistent with the overall medical record.  Particularly in light of the need to reconsider

2   Plaintiff's symptom claims, as discussed in detail above, the ALJ must reconsider the medical

3   opinion evidence and reassess Plaintiff's RFC on remand.

4   **C. Remedy**

5         The decision whether to remand for further proceedings or reverse and award benefits is

6   within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

7   1989).  An immediate award of benefits is appropriate where "no useful purpose would be served

8   by further administrative proceedings, or where the record has been thoroughly developed,"

9   *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the

10   delay caused by remand would be "unduly burdensome[.]"  *Terry v. Sullivan*, 903 F.2d 1273,

11   1280 (9th Cir. 1990); *see also Garrison*, 759 F.3d at 1021 (noting that a district court may abuse

12   its discretion not to remand for benefits when all of these conditions are met).  This policy is

13   based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are

14   outstanding issues that must be resolved before a determination can be made, and it is not clear

15   from the record that the ALJ would be required to find a claimant disabled if all the evidence

16   were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96

17   (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

18         The Court finds that further administrative proceedings are appropriate.  *See Treichler v.*

19   *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not

20   appropriate when further administrative proceedings would serve a useful purpose).  Here, the

21   ALJ improperly considered Plaintiff's symptom claims, which calls into question whether the

22   assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by

23   substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential

24   factual issues have been resolved, a remand for an award of benefits is inappropriate."  *Treichler*,

25   775 F.3d at 1101.  Instead, the Court remands this case for further proceedings.  On remand, the

26   ALJ should reevaluate Plaintiff's symptom claims, as well as all relevant medical opinion

27   evidence.  The ALJ should order additional consultative examinations and, if appropriate, take

28   additional testimony from medical experts.  The ALJ should conduct a new sequential analysis,

1    reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert
2    which includes all of the limitations credited by the ALJ.
3          Accordingly, it is **ORDERED**:
4          1.  Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSES the
5              Commissioner's decision and REMANDS this case back to the Commissioner of
6              Social Security for further proceedings consistent with this Order.
7          2.  An application for attorney fees may be filed by separate motion.
8          3.  The Clerk shall terminate any motions and deadlines and close this case.

Dated:    May 14, 2022

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

14